*R.*

| 49 | 501 |
| 66 | 350 |

## JOHN A. CAKE *vs.* GEORGE W. PEET.

Where the language of a deed fails, by mistake of the draftsman, to properly describe the property intended to be conveyed, a court of equity can reform it.

A deed, after describing particularly certain lands in *S*, proceeded as follows:—" Also all such other lands as I own or have any interest in in said *S*, reference being had to the land and probate records." Held that, upon proof that the grantor agreed and intended to convey by the deed an interest in an ore bed in *S* wholly disconnected from the lands described, and that both parties supposed the language used sufficient for

that purpose, a court of equity would so reform the deed as to make it include that interest.

Whether that interest would have passed under the deed as it was: *Quære.*

And held that proof of the grantor's declaration at the time, that he intended to convey his interest in the ore bed and desired the deed to be so drawn as to convey it, was admissible in support of an application for a reformation of the deed.

And held that the relief could be granted, under the Practice Act, in an action brought against the grantee to recover possession of the interest in the ore bed, with *mesne* profits, upon his answer alleging the necessary facts and praying for the relief.

CIVIL ACTION to recover possession of an interest in an ore bed and for *mesne* profits; brought to the Superior Court in Litchfield County, and reserved, upon the defendant's answer and a finding of the facts, for the advice of this court. The case is sufficiently stated in the opinion.

*C. B. Andrews* and *J. A. Cake*, for the plaintiff.

*H. B. Graves*, for the defendant.

PARDEE, J. On June 25th, 1864, John Adam conveyed to the defendant by deed containing covenants of seizin and warranty a piece of land situated in the town of Salisbury, describing in detail the location and boundaries thereof and the number of acres therein. The succeeding paragraph of the deed is in these words:—"Also, all such other lands and real estate as I own or have any interest in whatever, situated in said Salisbury, reference being had at all times to the land records of said Salisbury and to the probate records for the district of Sharon, for a more particular description of the same." On that day the grantor was the owner of one undivided sixth part of a piece of land containing about two acres, known as the Adams-Chatfield Ore Bed, situated in the town of Salisbury, about six miles distant from the land described in the first paragraph. He had acquired title thereto by distribution under the order of the court of probate for the district of Sharon from the estate of Samuel Forbes, his grandfather. In the year 1872 the defendant, claiming to have obtained

title to the grantor's interest in this last mentioned piece of
land by virtue of the second paragraph of the deed, re-
ceived and has hitherto retained as his own the sum of
$2,646.31, paid by sundry parties for the privilege of digging
and carrying therefrom iron ore, and other sums in like
manner for each succeeding year up to and including the
year 1879; all aggregating about $8,000.

The grantor died some time after the deed was given, but
the date of his death is not stated.   The plaintiff as one of
his heirs is entitled to an undivided part of the grantor's
interest in the ore bed if he died the owner thereof.   He
therefore alleges in his complaint that on the first day of
January, 1871, he was the owner and possessor of an undi-
vided interest in the ore bed; that the defendant then
wrongfully entered thereon, and dispossessed him; and that
he had continued such dispossession to the date of the com-
plaint, taking the rents and profits to himself.   He claims
judgment for possession and damages.   The case is reserved
for the advice of this court.

In *Herman* v. *Deming*, 44 Conn., 124, several persons
united in signing a mortgage deed which specifically de-
scribed the location and boundaries of several pieces of
land, some of which belonged to one and some to others of
them.   This descriptive paragraph was followed by another
in these words:—" Also all such other lands as we, the
grantors, or either of us, own or have any interest in, situa-
ted in the town of Canaan; reference being had to the land
and probate records for a more particular description of the
same."   Upon a petition for foreclosure this court held that
these general words imposed no lien upon land not other-
wise specified or mentioned, not adjacent to or in any way
connected with either of the parcels described; reserving
the question as to the sufficiency of such a description in a
deed intended to convey title, for determination when it
should arise.

The plaintiff insists that the deed in question conveyed
no title to the demanded land.

The defendant in his answer says that the grantor sold

HARTFORD DISTRICT.

and intended to convey it to him; that he paid a valuable consideration for it; that immediately upon the execution of the deed he took and has since retained possession of it as his own; and while insisting that the deed in its present form conveys title, from abundant caution he asks leave to reform it, if it does not, by the insertion of a more particular description. And under this prayer and the allegations of his answer, he offered parol evidence upon the trial for the purpose of proving that, at the time the deed was drawn and executed, the grantor declared to the scrivener that he intended by it to convey to the defendant his interest in the ore bed as well as in the farm on which he resided, and desired such a deed to be drawn as would carry out that purpose. The plaintiff objected to this evidence. The questions—does the deed in its present form convey title? if not, is the offered evidence admissible for the purpose of reforming it? and what judgment shall be rendered? are reserved for the answer and advice of this court.

It is of course the duty of courts to see that the ascertained intention of parties to contracts is carried into effect, at least as between them and those who represent them, if no insuperable legal barrier prevents; and courts of equity in numberless instances have supplied words to, taken them from, and corrected expressions in, written agreements, that they might speak the intent of the parties; and this upon parol proof if it be made entirely satisfactory. In *Henkle* v. *Royal Assurance Co.*, 1 Ves., 314, Lord HARDWICKE said:— "No doubt but this court has jurisdiction to relieve in respect of a plain mistake in contracts in writing, as well as against frauds in contracts; so that if reduced into writing contrary to the intent of the parties, on proper proof that would be rectified." In *Stedwell* v. *Anderson*, 21 Conn., 139, it is said: —" When property has been conveyed through mistake, by deed, which the parties never intended should be conveyed, which the grantor was under no legal or moral obligation to convey, and which the grantee in good conscience has no right to retain, a court of chancery will interfere and correct the mistake, whether it arose from a misapprehen-

sion of the facts or of the legal operation of the deed. A party may be as much injured by a mistake of the scrivener in the language of the deed, arising from his want of skill in the law, as from a misdescription of the property conveyed, arising from his want of knowledge upon that subject. And a person unskilled in the technical language of conveyances might be as readily misled in the one case as in the other." And it must be equally true that if by reason of a want of knowledge upon the part either of the scrivener or the parties as to the descriptive words necessary to render a deed operative, land has not been conveyed which the grantor had received payment for, and had agreed and intended to convey, chancery will supply the omitted description. In *Woodbury Savings Bank* v. *Charter Oak Ins. Co.*, 31 Conn., 517, it is said:—" There was a mutual mistake as to the proper mode of filling out the papers on both sides. The application was made out in the wrong name and the policy was made to the wrong person. But there was no fraud or misrepresentation. The papers would have been made out right if they had known how to do it, and it is immaterial whether the mistake was one of fact or law."

If therefore there was an agreement by the grantor to sell and by the grantee to buy the ore bed; if the grantor intended to use, and both believed that he had used, apt words to convey it; and if by reason of the misconception of both as to the legal sufficiency of the terms of the written contract, or of their mistake in not incorporating therein the necessary descriptive expressions which were in the precedent parol one, the deed has failed to convey the property intended, an occasion for equitable relief is presented, of which under our Practice Act the defendant could avail himself in the present proceeding. He is entitled to the privilege of proving by parol that the foregoing hypothesis represents the truth; that he paid a valuable consideration for the ore bed; that ever after the conveyance the grantor permitted him as owner to enjoy all use of which the land was susceptible, and receive and retain as his own all income

in such years as any could be derived from it; and this by way of supplementing the light thrown upon the joint intent by a consideration of the paragraph in question in its relation to the next preceding one, and of the deed as a whole.

And if the grantor made declarations accompanying and constituting a part of the act of preparing, executing and delivering the deed, to the effect that he had received payment for and had agreed to convey a particular piece of land, and expressed his belief that his written language was sufficient for that purpose, we think they are admissible for the purpose of confining an expression, which in its present form may apply to several pieces of land, to the one piece which in the intent of grantor and grantee it was its office to convey; of supplying the true meaning if by mistake none now exists.

Thus to remove an ambiguity existing because of an omission, or to correct a mistake, is quite within the power of a court of equity; and to do it upon the declaration of the grantor made when instructing the scrivener and when executing the deed, describing the particular portion of his estate which he had agreed to convey, and expressing his belief that his written language would convey it.

If upon the reception of the evidence objected to the deed shall be reformed in conformity with the defendant's prayer, the remaining question will cease to be pertinent; therefore we leave it undetermined.

The Superior Court is advised to receive the offered evidence.

In this opinion the other judges concurred.