GRACE KARNELL, *Administratrix, etc., et al.*

*v.*

BETTY S. NUTTING, *As Co-Trustee, et al.*

(No. 14168)

Decided December 19, 1980

*McCamic & McCamic, Jeremy C. McCamic,* for appellants.

*Bachmann, Hess, Bachmann & Garden, John L. Allen, Paul T. Tucker,* for appellees.

CAPLAN, JUSTICE:

Grace Karnell, administratrix of the estate of her father, John Hadjis, instituted action against the defendants,

owners of the McClain Building, situate in Wheeling, West Virginia. During his lifetime, John Hadjis, under a lease from said owners, operated Gregg's Restaurant which was located on the first floor of the McClain Building. After his death, Grace Karnell, his daughter, qualified as administratrix of his estate, and undertook to continue the operation of the restaurant business until such time as it could be sold.

By an agreement dated September 15, 1972, entered into between her and Mr. and Mrs. William H. Renforth, she agreed to sell the restaurant to the Renforths for the sum of $25,000.00. It is alleged that this agreement was conditioned upon the understanding that the owners would grant the Renforths a ten year lease. Although more than $5,000.00 has been paid by the Renforths to Grace Karnell, no lease was ever entered into. Consequently, the Renforths have refused to make any further payments under the agreement.

Anticipating the loss of the amount remaining unpaid under the agreement with the Renforths, Grace Karnell instituted an action against the defendants, complaining that the latter had breached their contract by failing to execute a ten year lease to the Renforths. She and the estate were therefore entitled to damages, she alleged.

In addition to the breach of contract alleged above, the plaintiffs assert that their complaint further charged tortious interference with a contract, negligent breach of contract and fraud. The trial court granted the defendant's motion for summary judgment. In so ruling, it expressed its opinion that the complaint charged only "tortious interference" with a contract and, there being no showing of any such interference, no genuine issue of a material fact existed. We reverse and remand this case for further development, consistent with the views expressed in this opinion.

In *Aetna Casualty and Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E. 2d 770 (1963), Judge Haymond discussed in great detail the law pertaining to summary judgments. Therein it was said that a motion for

summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law. Only if there is no genuine issue as to any material fact should summary judgment be granted. Conversely, if there is such issue summary judgment should be denied. See Rule 56, R.C.P. and *Masinter v. Webco Co.*, 164 W.Va. 241, 262 S.E. 2d 433 (1980). The question to be decided on a motion for summary judgment is whether there is a genuine issue of fact, not how that issue should be decided.

In the instant case the complaint alleges that before the contract between Karnell and the Renforths was entered into, the defendants had agreed to grant the Renforths a five year lease with an option to renew for an additional five years. The lease was to be prepared and executed within two weeks after September 15, 1972. The plaintiffs further allege that a loan was obtained, payments were made and the restaurant was turned over to the Renforths, all as a result of the agreement regarding the lease. The plaintiffs allege that the defendants repeatedly promised to supply the aforesaid lease to the Renforths, but that such lease was never delivered; that defendants' promises were fraudulent; and, that because of the "intentional, fraudulent and tortious refusal of the defendants to provide the promised lease, the said Renforths breached their contract with the said Grace Karnell".

Defendants in their answer admitted that "there was to be granted a lease to William H. Renforth and Mary M. Renforth, his wife, but deny that all the terms of the lease were agreed to."

Depositions on behalf of the plaintiffs were taken and, on the basis thereof and the pleadings and affidavits, the defendants moved for summary judgment. The affidavits were to the effect that the defendants had no knowledge of the terms of the contract of sale between Karnell and the Renforths; further, that they had no knowledge that the agreement was conditioned upon the Renforths securing a ten year lease from the owners of the building. All defendants affirmed that they had not interfered in any

way with the contract between Karnell and the Renforths and if it should be determined that they had so interfered such interference was unintentional. These affidavits were unanswered.

The court, after deliberation, granted the defendants' motion for summary judgment. The court was of the opinion that the depositions failed to disclose that a ten year lease was agreed to between the defendants and the Renforths. Although all of the terms of the lease were not settled between the parties, the ten year provision was discussed and allegedly agreed to by the defendants' attorney. The court, believing that the complaint charged only a tortious interference of contract action, entered summary judgment for defendants. It concluded that the defendants had no knowledge that the contract between Karnell and Renforths was conditioned upon the Renforths acquiring a ten year lease.

We find that the trial court erred in so ruling. The factual matters were quite complex and unless the facts established show a right to judgment with such clarity as to leave no room for controversy and show affirmatively that the adverse party cannot prevail under any circumstances, a party is not entitled to summary judgment. No such showing was made here.

It appears from the record that several issues remain for proper determination, some of which follow: was there any agreement by the defendants to give the Renforths a ten year lease; did the defendants promise a ten year lease to the Renforths when, in fact, they had no intention to so perform; did the defendants actually intend to lease the subject premises on a month to month basis to determine how the Renforths would fare as proprietors of the restaurant; did the defendants fail to pursue negotiations on the lease, thereby becoming liable for a negligent breach of contract; did the defendants fraudulently fail to give the Renforths a written lease; and, did the defendants tortiously interfere with the contract between Karnell and the Renforths.

A party who moves for summary judgment has the burden of showing there is no genuine issue of fact and any doubts are resolved against the movant. *Justus v. Dotson,* 161 W.Va. 443, 242 S.E. 2d 575 (1978); *Aetna Casualty and Surety Co. v. Federal Insurance Co. of New York, supra;* and 3 Barron and Holtzoff, *Federal Practice and Procedure,* Rules Edition, Section 1235. As Justice Miller succinctly stated in *Masinter v. Webco Co.,* 164 W.Va. 241, 262 S.E. 2d 433 (1980), "[e]ven if the trial judge is of the opinion to direct a verdict, he should nevertheless ordinarily hear evidence and, upon a trial, direct a verdict rather than try the case in advance on a motion for summary judgment." Likewise, in 6 J. Moore, *Federal Practice* § 56.16 (1979) it is said that summary judgment should not be utilized in complex cases, particularly where issues involving motive and intent are present.

Concluding as we do in the instant case that issues involving motive and intent were involved and that the issues were too complex for the granting of summary judgment, we reverse the judgment of the trial court and remand the case for further proceedings not inconsistent with the views expressed herein.

*Reversed and remanded.*